UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KRISTIE CRIPPEN, as Guardian and Next Friend of
KIMBERLY CRIPPEN, a legally incapacitated
individual,

                    Plaintiff,                          Case No. 14-cr-10699

v.                                                      Honorable Thomas L. Ludington

CITY OF MIDLAND, JEFFREY A. DOYLE, and
GERALD LADWIG, in his individual capacity as the
Midland Police Chief,

                    Defendants.

_____/

**ORDER GRANTING DEFENDANTS CITY OF MIDLAND AND GERALD LADWIG'S
MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION TO
COMPEL, AND DISMISSING COMPLAINT AS TO DEFENDANTS CITY OF
MIDLAND AND GERALD LADWIG**

Defendants City of Midland and Chief Gerald Ladwig[1] move for summary judgment

against Plaintiff Kimberly Crippen.[2] Defendants assert that Crippen cannot meet the high

standard of municipal and individual liability required to maintain a 28 U.S.C. § 1983 cause of

action. Crippen responds that she is able to establish that the City maintained an unconstitutional

policy or custom of poor training and indifference to constitutional violations. She concedes,

however, that she cannot meet the high standard of supervisory liability required to maintain her

case against Chief Ladwig. Because Crippen cannot meet either standard, Defendants City of

---

[1]    Any references made to Defendants herein apply only to the moving defendants, the City and Chief Ladwig, unless otherwise denoted.

[2]    Kimberly Crippen is a legally incapacitated adult under the guardianship of her daughter, Kristie Crippen, who brings this case as Next Friend of Kimberly. All references to Plaintiff made herein are to Kimberly Crippen, unless otherwise denoted.

Midland and Chief Gerald Ladwig's motion for summary judgment will be granted and they will be dismissed from the case.

Crippen has also filed a motion to compel discovery from Defendant City of Midland. She seeks disciplinary records from Chief Ladwig's tenure as police chief. She claims that these documents are relevant to her cause of action because they are evidence of the City of Midland Police Department's unconstitutional policy and/or custom of inadequate supervision and acquiescence to constitutional violations by its police officers. But since the information sought—records of investigations actually undertaken and discipline actually meted out—is not relevant to the claim that the Department had a policy of not doing those things, the motion will be denied.

### I.

The primary assertion in the case is that City of Midland police officer Jeffrey Doyle sexually assaulted Kimberly Crippen while investigating a theft Crippen perpetrated.

### A.

On February 15, 2011, the City of Midland Police Department received a report of a "larceny from a building." Dep. of Steven L. London, ECF No. 29, Ex. 1 at 40. Kimberly Crippen had stolen a plant from a laundromat in Midland. Dep. of Kimberly Crippen, *Id*., Ex. 2 at 83. Crippen returned home with the plant after taking it. *Id*. at 83-84.

Officer Jeffrey Doyle received a dispatch from 911 to investigate the robbery. Dep. of Jeffrey Doyle, *Id*., Ex. 5. Doyle was unable to locate Crippen on the day of the incident. Doyle took the investigation back up the next day when he went to Crippen's house. Crippen lived in Sanford, Michigan at the time, outside the normal jurisdictional scope of the Midland City Police Department.

Upon arriving at Crippen's house, Doyle questioned her about the incident. Crippen admitted to stealing the plant but then stated that she had thrown it away in a dumpster behind her apartment building. Doyle retrieved the plant and placed it in his police vehicle. At that point, Doyle came back inside. What followed was the sexual assault of Kimberly Crippen.[3] After committing the assault, Doyle warned Crippen against telling anyone about what transpired.

**B.**

Once Doyle had left, Crippen informed her mother and daughter of the incident. Her mother immediately reported the attack to the City of Midland Police Department. Her report was met with incredulity by Sergeant London, the officer with whom Crippen's mother was put in contact.

Despite this initial resistance, Police Chief Gerald Ladwig informed the Michigan State Police of the allegations and the State Police initiated an investigation. Doyle was eventually arrested on charges of criminal sexual conduct, obstruction of justice, and extortion. Doyle pled no contest and is currently serving a term of 72 months' imprisonment.

**C.**

The sexual assault of Kimberly Crippen by Doyle was not the first time Doyle had been accused of improper sexual conduct while on duty. In 2009 a woman filed a complaint with the Midland Police Department alleging that Doyle sexually assaulted her while he was on duty. This individual claimed that Doyle was investigating a larceny at her home when he sexually assaulted her by fondling and digitally penetrating her. The complainant suffered from mental limitations. Chief Ladwig initiated an internal investigation of the incident and referred the

---

[3] The facts of the sexual assault are provided in more detail in Plaintiff's brief but would be unnecessarily included here. ECF No. 29 at 8.

incident to the Michigan State Police for a criminal investigation. The investigations were conducted completely separate from each other. Both investigations deemed the allegations to be unfounded and no charges were brought against Doyle.

The second incident arose in 2010. Doyle was accused of carrying on an extramarital sexual affair with a married woman while he was on duty. An investigation was opened into the accusations but they were deemed unfounded when the woman and her husband refused to speak with the investigating officer and when Doyle denied any sexual relationship with the woman. Doyle later admitted that he was in a consensual sexual relationship with the woman and had sexual contact with her once while on duty and once while off duty.

## II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

The Court must draw all reasonable inferences in favor of the non-movant when reviewing the evidence and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law." *Id.* at 251-52, *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475
U.S. 574, 587 (1986). "Entry of summary judgment is appropriate 'against a party who fails to
make a showing sufficient to establish the existence of an element essential to that party's case,
and on which that party will bear the burden of proof at trial.'" *Walton v. Ford Motor Co.*, 424
F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III.

Defendants City and Ladwig move for summary judgment on the § 1983 claims Crippen
brings against them. The moving defendants claim that Crippen is unable to prove that the City
had unconstitutional policies and procedures that caused the harm she suffered. They also claim
that Crippen cannot demonstrate supervisory liability on the part of Chief Ladwig based on his
alleged failure to train or supervise Defendant Doyle. Crippen concedes her inability to sustain
her cause of action against Ladwig. Because she is also unable to sustain her cause of action
against Defendant City, summary judgment will be entered in favor of the moving defendants.

### A.

The City first addresses the § 1983 claims Crippen brings against it. According to the
City, Crippen needs to show that it maintained a policy or custom that is the direct cause of the
constitutional violation Crippen suffered. Crippen contests these claims and argues that there are
legitimate questions of material fact concerning whether the City maintained a policy that
tolerated sexual misconduct by its offers and whether that policy was the driving force behind
Crippen's injuries.

Court's must "engage[] in a two-pronged inquiry when considering a municipal-liability
claim." *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). The first

step is to determine if Plaintiff "asserted the deprivation of a constitutional right." *Id.* "If so, the court must then decide whether the City and County are responsible for that deprivation." *Id.*

**1.**

As to the first inquiry, Crippen claims that sexual abuse by a state actor violates her Fourteenth Amendment rights. ECF No. 29 at 13; *see also United States v. Morris*, 494 F. App'x 574, 581 (6th Cir. 2012) ("[I]t is more than obvious that the right to not be raped by a law enforcement officer lies at the core of the rights protected by the Due Process Clause[.]"). The City does not contest this allegation. As a result, the only point of contention between the parties is whether the City maintained a policy that caused the constitutional violation Crippen suffered.

**2.**

To survive summary judgment, Crippen must demonstrate that her constitutional violation was "a direct result of the [City's] official policy or custom." *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 743 (6th Cir. 2001). To impose liability on the City under an official policy that policy must be the result of "the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403-04 (1997). "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.*

Crippen may prove the City maintained an unconstitutional policy or custom through four different "avenues": "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Crippen alleges that she is able to show two of these: inadequate supervision and tolerance or acquiescence. ECF No. 29 at 14.

### i.

Crippen alleges that the City is liable under a failure to supervise theory. But she does not articulate how exactly the City's police department inadequately supervised its officers in a manner that directly caused the harm she suffered. She appears to make four claims: first, that the department's internal investigation system was flawed; second, that the department failed to evaluate its personnel; third, the department's officers failed to inform supervisors of misconduct; and fourth, the department allowed officers to conduct extra-jurisdictional activity that allowed the officer's to evade supervision.

To prove a claim of inadequate supervision, Crippen must show that the City's "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). The failure to supervise theory itself involves a two-step inquiry. The first question "is whether th[e] training [or supervision] program is adequate[.]" Id. at 390. "[I]f it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Id*. Crippen cannot meet the requirements of this two-step first inquiry.

First, she claims that the City's internal investigation procedure is flawed. Specifically, she writes that "it is not true that Ladwig can outsource his responsibilities and the responsibilities of the City of Midland to an outside agency." ECF No. 29 at 20. As an initial matter, Crippen engages in no analysis of the department's internal review procedure. She only states conclusorily that the internal review procedures are inadequate and superficial. She also

cites to no authority for her claim that a department cannot and should not refer criminal misconduct investigations to third parties.

But assuming, *arguendo*, that the department did not adequately review the incidents where Doyle allegedly sexually assaulted a mentally ill woman and allegedly carried on an affair with a married woman, these two incidents do not a policy make. Crippen claims that the information requested in her motion to compel will further substantiate her claims, but her counsel has viewed the information and she does not allege that any of those disciplinary incidents involved sexual misconduct by officers, let alone that those misconduct investigations were inadequate.

Second, she claims, relatedly, that Ladwig's decision to suspend yearly performance evaluations and instead use a supervisor-reporting system constituted a failure to supervise. She targets the fact that there appears to be no written evaluation of Doyle from 2009-11 and that Doyle's direct supervisor on the day Crippen was assaulted was not aware that he had previously been accused of sexual misconduct.

Crippen relies on *Amerson v. Waterford Twp.*, 562 F. App'x 484 (6th Cir. 2014), for the proposition that "'plaintiffs may bring claims against municipalities for failure to supervise where they do not conduct reviews or monitor the performance of their employees' and the municipality 'lacks such a process out of deliberate indifference for the constitutional violations that may occur as a result.'" ECF No. 29 at 21-22 (quoting *Amerson*, 562 F. App'x at 492). But the case is of no assistance to Crippen.

While *Amerson* does hold that failure to supervise claims are cognizable, plaintiffs "must also show that the municipality lacks such a process out of deliberate indifference for the constitutional violations that may occur as a result." *Amerson*, 562 F. App'x at 492. In fact, in

*Amerson*, a case concerning allegations of excessive force, the Sixth Circuit held that merely presenting evidence that the defendant township "failed to conduct performance evaluations . . . alone is not enough to show deliberate indifference[.]" *Id*. The Sixth Circuit held that to support such a claim a plaintiff would need to present "evidence of a pattern of excessive force, a record of officers going unpunished for excessive force, or other circumstances tending to show that [the township] was aware or could have been aware that [the officer] was prone to unwarranted application of force." *Id*. Here, Crippen presents no more than speculation that there were potentially issues of sexual misconduct in the department that would have been uncovered had performance evaluations been conducted.

Even if this argument were to meet the two-prong test for failure to supervise, Crippen still cannot demonstrate that it was the direct cause of the constitutional violation. She draws no connection between the two. Her only alleged connection is the claim that the department would have seen "warning signs" in Doyle's behavior. She does not go on to say what these warning signs were. She only speculates that they surely must have existed. But, "in order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in [her] favor on more than mere speculation[.]" *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (quoting *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994)) (internal quotation marks and emendations omitted).

Crippen's fourth and final claim is that the department had a policy of permitting extra-jurisdictional activity by its officers. Crippen takes particular issue with the fact that Doyle's extra-jurisdictional activity on the day ran afoul of Mich. Comp. Laws § 764.2a. ECF No. 36 at 25. According to Crippen, this was not an isolated incident. She claims that the department had a policy of conducting extra-jurisdictional activities that did not comply with M.C.L. § 764.2a.

Yet, as with her prior allegation, Crippen does not draw any connection between the claim that officers were improperly trained in conducting extra-jurisdictional activities and that this was the result of a deliberate indifference to the possibility of sexual misconduct by its officers. The only incident where allegedly illegal extra-jurisdictional activity[4] led to sexual misconduct by officers (or, for that matter, any misconduct by officers) is the incident in question here.

**ii.**

Crippen's second theory of establishing an unconstitutional policy or custom is that there was a failure to act in response to a pattern of illegal activity. The pattern of illegal activity, Crippen claims, was Doyle's sexual misconduct with members of the public.

To prove such a claim in the context of sexual abuse or misconduct, Crippen must establish:

(1) the existence of a clear and persistent pattern of sexual abuse by [department] employees;

(2) notice or constructive notice on the part of the [department];

(3) the [department's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and

(4) that the [department's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 507-08 (6th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)). The Sixth Circuit admonished in *Doe* that "'[d]eliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." *Id*. at 508.

---

[4] It should be noted that it is not even clear that the extra-jurisdictional activity of the City's officers ran afoul of M.C.L. § 764.2a, but it is assumed for the sake of argument that it does.

*Doe* concerned a case where a teacher had sexually abused a student. The student then filed suit against the school board. It was revealed during the litigation that the teacher that had abused the plaintiff had also been accused previously of abusing students. There were nine allegations in total. The allegations had made their way to the Department of Human Services, which conducted an investigation independent from the school board. DHS determined that four out of the nine allegations were "founded" and said "immediate action" needed to be taken to ensure that the teacher had no further contact with students. The teacher accused of sexual assault then became proactive and sought a hearing with DHS. After this hearing DHS and the teacher entered into an agreement which, despite whatever affect it may have been intended to have, the interim superintendent construed as "an exoneration[.]" *Id*. at 503. Following this agreement between DHS and the teacher and its presentation to school officials, the teacher was rehired by the school district. It is then he began sexually abusing Doe, the plaintiff.

Reviewing these facts, the Sixth Circuit held that "[i]t cannot be said . . . that [the board's] failure to act in [this] case was the direct result of a custom in the sense that the School Board consciously never acted when confronted with its employees' egregious and obviously unconstitutional conduct." *Id*. at 508. Furthermore, it held that the board's "delegation to DHS to initiate an investigation was appropriate" and amounted to action by the board in response to a constitutional violation by one of its employees. *Id*. The Sixth Circuit was also careful to note that "[t]here is an analytical distinction between being deliberately indifferent as to one particular incident, and having a 'policy' of always being deliberately indifferent to unconstitutional actions." *Id*. Thus, the fact that one individual was able to evade discipline and oversight long enough to commit a heinous malfeasance did not amount to a broad policy of inaction, even where there were nine prior allegations of misconduct, four of which were deemed "founded."

The allegations made by Crippen here are even less problematic than those in *Doe*. According to Crippen, there are only two prior known events of sexual misconduct by officers and in both prior incidents Doyle was the offending officer. Not only that, neither of the incidents was deemed founded. Even if, as Crippen suggests, there was reason to question the merits of the prior investigations, the two incidents are not analogous. One involved a claim that Doyle sexually assaulted a mentally handicapped woman. This, indeed, is of the type that would go toward proving a custom or policy. The second incident, however, was an allegation that Doyle was conducting a consensual affair with a married adult and acted in furtherance of this affair while on duty. This incident is unhelpful. Because Michigan still maintains felony law against adultery does not mean that the broad brush of "illegal sexual conduct" can be used to characterize these two incidents as equivalent. Even if such a level of generality could be applied, two prior incidents, both investigated and deemed unfounded, does not prove a policy or custom, per *Doe*.

No reasonable juror could find that the City of Midland could be held liable under § 1983 for the harm to Crippen. As a result, summary judgment will be entered in favor of the City.

**B.**

Chief Ladwig also moves for summary judgment. He claims that Crippen cannot show, as required by Sixth Circuit precedent, that Ladwig "encouraged the specific incident of misconduct or in some other way directly participated in it." ECF No. 26 at 12 (quoting *Essex v. County of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013)). Crippen concedes that she cannot meet this burden. Chief Ladwig's motion will be granted.

**IV.**

- 12 -

The final matter to be addressed is Crippen's pending motion to compel. ECF No. 23. Plaintiff seeks the compulsion of records maintained by the City "detailing approximately 16 incidents involving approximately 11 City of Midland police officers or personnel during Chief Ladwig's tenure." *Id*. at 9. Defendants respond that Crippen is not entitled to the records because she cannot connect the content of the documents to the substance of her claim in a manner that proves their relevance. ECF No. 25 at 8-9. This is particularly problematic Defendant argues, because Crippen's counsel has viewed the content of the documents. *Id*.

Parties are permitted under Federal Rule of Civil Procedure 37 to move for an order compelling disclosure or discovery. "The Federal Rules of Civil Procedure are in place to facilitate discovery of all relevant evidence. Rule 26 authorizes a broad scope of discovery, provided the material sought has some probative value in proving or disproving a claim or defense." *Gamby v. First Nat'l Bank of Omaha*, 06-11020, 2009 WL 963116 (E.D. Mich. Apr. 8, 2009) (citing Fed. R. Civ. P. 26(b)(1)).

Crippen's motion will be denied because she cannot meet this standard. First, she does not explain how evidence that the department was actively disciplining officers by issuing "orders that the offending officer undergo counseling, therapy, or a fitness for duty evaluation," ECF No. 23 at 9, supports her claims that the department had a policy or custom of ignoring officer abuses. Second, even if the content of these documents could indeed support these claims, she does not explain how they do. Crippen's counsel was given the opportunity to review these documents in the presence of defense counsel. Yet she does not identify any information regarding the content of these documents and how it would corroborate her allegations. She only states that they show "that the Midland Police Department was out of control." *Id*. at 10. But that

bare conclusory assertion does not meet the standard of probative value required to compel discovery.

As already outlined in this opinion, generalized assertions that "supervision was non-existent and a culture of neglect by supervisory personnel permeated the department" are insufficient to sustain a § 1983 municipal liability claim. There must be some nexus between the constitutional harm claimed and the unconstitutional policy or custom of the department. Indeed it must be "a custom of tolerance or acquiescence of federal rights violations" not just the existence of conditions that could permit one officer to violate an individual's federal rights. *Thomas v. City of Chattanooga*, 398 F.3d at 429.

## V.

Accordingly, it is **ORDERED** that Defendants City of Midland and Chief Gerald Ladwig's motion for summary judgment, ECF No. 26, is **GRANTED.**

It is further **ORDERED** that Plaintiff Kristie Crippen's Motion to Compel, ECF No. 23, is **DENIED**.

It is further **ORDERED** that Plaintiff Kristie Crippen's Complaint, ECF No. 1, is **DISMISSED with prejudice** as to Defendants City of Midland and Chief Gerald Ladwig.


Dated: May 19, 2015                                    s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 19, 2015.

                              s/Karri Sandusky
                              Karri Sandusky, Acting Case Manager